HEARD APRIL TERM, 1875.

## REEDER & DAVIS *vs.* FLINN.

In 1851 a number of slaves were conveyed in trust for the sole and separate use of wife for life, with the right, at her discretion, to possess and use or hire out the same. From 1852 to 1863, inclusive, husband purchased, from time to time, six adjoining tracts of land, constituting, as a whole, the plantation on which he and his wife resided, which he cultivated with the slaves held in trust, and paid for out of the proceeds of the crops made thereon by their labor. The husband managed and controlled the slaves, and disposed of the proceeds of their labor as he saw fit, and all this was done with the full knowledge, acquiescence and consent of the wife. The title to the lands was taken by him in his own name, and in 1870 he mortgaged them to a creditor: *Held,* That the income derived from the labor of the slaves must be regarded as a gift from the wife to her husband; that the title to the lands was in him, as an individual, unaffected by any trust, and that the mortgage was a valid lien thereon.

Where a wife permits her husband to manage her separate estate for a number of years, and dispose of the income as he sees fit, equity treats it as gift to him.

A wife, by negligence or acquiescence, may forfeit her right to equities against her husband, which, otherwise, she might have asserted.

BEFORE TOWNSEND, J., AT DARLINGTON, OCTOBER TERM, 1874.

This was an action by Reeder & Davis, originally against H. K. W. Flinn, for foreclosure of a mortgage given by the defendant to the plaintiffs, dated April 23, 1870. The summons and complaint were afterwards amended by making Ann D. Flinn, his wife, and A. F. Edwards and Evander R. McIver parties defendant.

The case was referred to J. H. Hudson, Esq., as Referee, who submitted a report, filed April 2, 1874, which fully and clearly states the facts upon which the judgment of the Court was founded, also his conclusions of law. The report is as follows:

"The case was fully and ably argued on both sides, and the only labor left to the Referee is to arrive at his conclusions of the law from the full collection of authorities furnished him.

"The Referee finds the following to be the facts of the case:

"1. That Henry K. W. Flinn ·and Ann D. Ervin intermarried on the 6th day of March, A. D. 1851, the husband owning but very little property, while the wife was possessed, in her own right, of a handsome personal· estate, consisting principally of negro slaves, forty in number, in the hands of her guardian, A. L. Scarborough.

"That on the 26th day of July, A. D. 1851, the husband, H. K. W. Flinn, by deed, duly executed, conveyed these slaves to Thomas J. Flinn, upon the following uses and trusts, viz.: 'To and for the

sole and separate use of the said Ann D. Flinn for and during the joint lives of her said husband and herself, with remainder to her if she should be the survivor; with remainder to her issue if he should survive her; remainder to him if he should survive her and there should be no issue; with the right, at her 'discretion, either to possess and use the said slaves, or hire the same out.'' This deed was duly recorded in the offices designated by law. Of the said marriage, issue was born—Dozier Flinn. On the 3d day of January, A. D. 1872, Dr. H. K. W. Flinn departed this life intestate, leaving his wife and child him surviving.

"3. That in the year A. D. 1851, Dr. Flinn purchased in Darlington a tract of land, known as the Hill place, on a credit, and took the titles in his own name, for about $5,000, and shortly afterwards sold it for a larger amount than he contracted to pay for it, Batson Jordan being the purchaser. On the 16th of July, 1852, he purchased the McCown land, of five hundred and fifty-three acres; on the 23d of July, 1852, the Stewart tract, of two hundred acres; on February 1, 1854, the Poindexter tract, of one thousand one hundred and four acres; on the 14th of January, 1856, the Zimmerman tract, of four hundred and one acres, and November 20, 1863, the Hudson tract, of one hundred and fifty-six acres. These tracts of land are all adjacent to each other, and make a single body, aggregating two thousand four hundred and fourteen acres, and throughout the testimony is, for convenience, called the Home place. These successive land purchases were all made by Dr. H. K. W. Flinn, and the titles thereto all taken in his name. In the beginning of the year 1854, Dr. Flinn and family moved on this land, and began the cultivation of it, and so continued up to the time of his death. His surviving widow and child are yet residing on the homestead.

"4. That Dr. Flinn purchased these lands in his own name, uniformly used the territory as his own property, claimed it as his own, and seems never to have doubted his right and title thereto until the institution of this action.

"5. That the negroes, conveyed in the deed aforesaid, were the separate property of Ann D. Flinn, which, according to the terms of the trust, she had a right, at her discretion, either to possess and use or hire them out. That they were accordingly, by the trustee, turned over to Ann D. Flinn for her use; that they were kept together and worked on the land aforesaid by Dr. Flinn, who

received the incomes or proceeds of their labor from year to year until emancipation, and applied the same to the comfortable. support of himself, wife and child, and also to the payment of almost all, if not the whole, of the purchase money of the tracts of land aforesaid. A fair conclusion from the testimony is that the lands were entirely so paid for, and this is the finding of the Referee.

"7. That the husband's management of the negroes and the plantation, and his receipt, use and appropriation of the income of their labor, was with the knowledge and consent of his wife, resident with him.

"8. That all contracts made with factors and merchants in Charleston for plantation and family supplies, including the debt contracted with the plaintiffs, were made by Dr. Flinn in his own name, and it was extended alone to him; that the claim of the plaintiffs is upon a bond given for an account contracted mainly for plantation and family supplies.

"9. That before the plaintiffs took the bond and mortgage, the subject of this action, one of them had sufficient notice of the claim of Mrs. Flinn to the land conveyed thereby to have put him upon inquiry; that inquiry was actually made, in consequence of this notice to one of the members of the firm, which was notice to both.

"10. That the mortgage to A. F. Edwards is in the hands of the assignee, E. R. McIver, a valid debt against the estate of Dr. Flinn, and, being anterior to that of the plaintiffs, will take precedence as a lien on the right, title and interest of Dr. Flinn in the Home place, provided his title be superior to the equities of the wife, set up in her defense to this action.

"11. That there is now due and unpaid upon the bond and mortgage given to A. F. Edwards the sum of two thousand three hundred and ninety-five ($2,395) dollars, with interest at the rate of fifteen per cent. per annum, payable annually from December 8, 1868.

"12. That there is due and unpaid upon the bond and mortgage to the plaintiffs the sum of five thousand five hundred dollars, with interest at one per cent. per month, calculated from April 23, 1870, to the first day of March, A. D. 1871, and then an amount found, which said amount of principal and interest will bear interest from March 1, 1871, to the present time or day of payment.

"*Conclusions of law:*

"The fundamental inquiry in this action is, what right and title did Dr. H. K. W. Flinn acquire in and to the land covered by the two mortgage deeds, as against his wife, Ann D. Flinn? Because a creditor can stand on no higher grounds than Dr. Flinn, unless it be one who stands in the position of an innocent purchaser or creditor without notice. And in this action to foreclose their mortgage, the plaintiffs, whatever may be their equities in the matter of the original debt, in the opinion of the Referee, do not occupy the position of creditors or purchasers without notice, their mortgage deed having been taken after inquiry and information.

"To the aforesaid fundamental inquiry, we will, therefore, direct our attention, upon the basis of the facts as found above for our guidance.

"It is the settled law of this State that when property is given or settled to the separate use of a married woman, she has no power to charge, encumber or dispose of it, unless in so far as power to do so has been conferred on her by the instrument creating her estate, which power must be strictly pursued, in contradiction to many English cases, in which it has been held that she is a *femme sole* with respect to her separate property, and may charge or dispose of it as she pleases, unless in so far as she is expressly restricted by the instrument.—*Reid* vs. *Lamar*, 1 Strob. Eq., 27.

"Such has been the settled law of our State since the case of *Erving* vs. *Smith*, 3 DeS., 417, when the doctrine of the English Courts was departed from, and a safer, wiser and better rule established, which has met with the sanction and approval of all the Courts of last resort in this State, including the present Supreme Court.—See *Dunn* vs. *Dunn*, 1 S. C., 350, and *Charles* vs. *Coker*, 2 S. C., 123.

"Prior to the adoption of our present Constitution, a married woman was never, in the proper sense of the term, a *femme sole* as to her separate estate, but could only execute the powers expressly *delegated* to her by the instrument creating the separate estate; while in England, and many of the States of the Union, she is, as to her separate estate, a *femme sole*, with unlimited power to bind and dispose of the same, except in so far as she is expressly restricted in so doing by the terms of the instrument creating it. By this firmly fixed rule of law, the present case must be governed.

"The question, therefore, naturally arises, how far does the deed of H. K. W. Flinn to Thomas J. Flinn give to the wife, Ann D. Flinn, power and control over the property therein conveyed to her sole and separate use?

"It gives her no power of disposition whatever over the property itself, and no contract of hers could, therefore, bind or affect it; but upon the joint request of husband and wife, the trustee is authorized to substitute other negro slaves for those mentioned in the deed. Over the income and usufruct of said slaves, the deed does give Mrs. Flinn free control in the following language:

"'The said Thomas J. Flinn and his heirs shall hold the said slaves, and the increase thereof, in the further trust and confidence that the parties interested in the same, for the period during which they may be entitled to receive the income, may, at *their discretion*, either possess and use the said slaves or hire out the same.' She is here clearly given the right, the trustee consenting, to possess and use the said slaves during her life, or to hire them out and receive the hire; and she unquestionably had the right, at her discretion, to dispose of the proceeds of these negro slaves, or of their hire, when turned over to her by the trustee for that purpose, in obedience to the terms of the deed of trust. Having this privilege, she could make her husband the beneficiary of the income. If she did this, she can neither in law or in equity have reclamation upon his estate for their use or hire, nor can she follow the property which he acquired by this usufruct and stamp it with the trusts of the deed or with the character of a trust resulting to her.

"When a married woman is resident with her husband, and suffers him, without objection, to receive the income of her separate estate, or to appropriate any annual payments, such as pin money directed to be paid to her, it will be intended that these payments were made to or appropriated by the husband with her consent; consequently, even as against *the husband*, the wife or her representatives will not be entitled to an account for more than one year's arrears.          *     *     *     *     *     *

"When the wife has allowed the husband to receive the income of her separate estate during his life without objection or interference, it will be presumed that the fund was placed by her at his absolute disposal, and all past accumulations from that source will belong to him absolutely, and go to his personal representatives at his death.—Hill on Trustees, *425. Note 1 to this page says:

'It is well settled that when a wife, living with her husband, permits him to receive the rents and profits of her separate estate, the presumption is that it is with her assent and by way of gift.' In *Smith* vs. *Camelford*, (2 Ves., Jr., 698 to 716,) the Court declared that if the wife permitted her husband to receive the rents of her separate estate, he was not afterwards accountable to her for it. The same decision was pronounced in *Milms* vs. *Rusk*, (2 Ves., Jr., 488,) the wife having expressly empowered her husband to receive the rents of her separate estate during her life. *Powell* vs. *Hanky* (2 P. Will., 82,) is a case where a similar decree was pronounced upon her permission and acquiescence in her husband receiving the produce of her separate property. And in *Squire* vs. *Dean*, (4 Bro. C. C., 326,) the husband received the interest of his wife's separate estate and applied it to the use of the family; her assent to the receipt and application was presumed, and she was not permitted to claim anything on account of it out of her husband's assets.

" The foregoing English cases are referred to in Roper on Husband and Wife, *220-221, and the author proceeds to say : ' It cannot escape the observation of the reader that the principle that pervades the cases on this subject is this : either *express gift* by the wife to the husband, or an *implied* gift to him (when it can be raised) of her separate estate, resulting from cohabitation and her acquiescence. Upon this presumption it is that if the wife, without any intermediate claim, suffer her husband to receive the annual income of her separate estate, a Court of equity will permit her, surviving him, to charge his assets in account with *no more* than the amount of one year's arrears, or for one year of his receipts preceding his death, according to *some* cases, and not even with one year's receipts or arrears, according to others.'—Roper on Husband and Wife, *221.

" If the wife direct the income of her separate estate to be ' paid to her husband, it can never be reclaimed to her separate use.'— Redfield on the Law of Wills, vol. 3, 173. In *Charles* vs. *Coker*, 2 S. C., 136, the present Supreme Court of South Carolina reiterates the same doctrine. A careful and impartial review of the testimony satisfies my mind that H. K. W. Flinn used and appropriated the proceeds of the labor of these slaves according to his own judgment and discretion, and with the full knowledge, consent and acquiescence of his wife. He was the sole manager of

the property, and claimed and used the profits as his own.  With the income he supported himself and family in excellent style, and purchased horses, mules, farming implements, negroes and land, all of which he uniformly claimed as his own, in the presence of his wife and the outside world.  She certainly was cognizant of this—permitted it—never objected to it, and never took steps to prevent it, which she had the right and power to do had she so desired.  She states in her examination that she never objected to her husband managing the estate and using the income.  Dr. Flinn, in his answer, says, in substance, that he had no doubt as to his perfect title to the land until about the time this action was to be commenced, when a legal opinion to the contrary was given.  All his previous declarations, which were offered and received in evidence, were declarations of his right to the land.  He claimed and used the income from the labor of the negroes as absolutely his own, and was careful not to pay for the land in question with money belonging to his wife in the hands of A. L. Scarborough.

" The declaration of Mrs. Flinn to her husband and Mr. Cannon, in 1857, at the Home place, after the shooting match, and the advice which she asked and received of her brother, E. P. Ervin, a lawyer, touching her rights under the deed of trust, and the result of which she made known to her husband, cannot weigh against her long acquiescence in her husband's use of the estate both before and subsequent to that time, and his outspoken claims of right consequent therefrom.

" In the *Methodist Episcopal Church* vs. *Jacques,* 3 Johns. Ch., 80, Chancellor Kent says, in reference to this question, 'that as between strangers a more strict and severe proof would be required ; but the books teach us that the greatest liberality is shown, and the most favorable presumptions indulged, when the husband is permitted by the wife to be concerned in the management of the income of her separate estate as it accrued.'

" For nearly twenty years Dr. Flinn was allowed by his wife to appropriate to his own use without objection the income of her separate property, and not until the institution of this action has she seen fit to interpose in a definite manner a legal objection to his title to the accumulations therefrom and claim them as her own.

" The vicissitudes of time, the ravages of war and great distress of our people, which have doubtless had much to do in giving rise to the present contention, render it unpleasant to the Referee to

pronounce the judgment which the law directs him to render in this case. But the preservation of the broad principles of law and equity that underlie and govern the business transactions of men and constitute the rules of property is of the last importance and does not readily admit of exceptions to meet individual cases.

"1. It is the judgment of the Referee that the title to the lands conveyed by Dr. Flinn to the plaintiffs, in the mortgage deed of April 23d, 1870, is in the said H. K. W. Flinn in fee simple ; that the surviving widow, Ann D. Flinn, has no right or title thereto by virtue of the deed of trust of July 26, 1851, arising from payment of the purchase money of said land by her husband, from the proceeds of the labor of the slaves in said deed of trust mentioned, in derogation of the rights of the plaintiffs.

"2. That the plaintiffs are entitled to their judgment for the amount of the said bond, and for the foreclosure of their said mortgage, and sale of the mortgaged premises upon such terms as the Court may direct.

"3. That the mortgage to A. F. Edwards, assigned to E. R. McIver, is a prior valid lien upon the same land, and the sale under the plaintiffs' mortgage must be subject to this prior incumbrance.

"Other questions of interest were pressed with earnestness in the argument of counsels for the plaintiffs and defendants, but, being in effect disposed of by the aforesaid findings of fact and conclusions of law, their discussion is rendered unnecessary, e. g., whether the plaintiffs had notice of Mrs. Flinn's claim, and the effect of that notice becomes of no consequence under the aforesaid judgment, which decides her claim to be unfounded. The same is to be remarked of the question whether mortgagees occupy the position of purchasers for valuable consideration, and whether the plaintiffs, whose demand is for supplies furnished for the family and plantation, supposing it to be trust property, have not a right to subject it to the payment of their claim. The judgment dispenses with the consideration of these questions."

The defendant, Ann D. Flinn, excepted to the report of the Referee, by her attorneys, upon the grounds :

1. That the Referee misconceived the testimony as to her supposed acquiescence in the use by her husband of the incomes from the trust property.

2. Failing to distinguish between her acquiescence in the purchase of supplies and in the purchase of the mortgaged property.

3. That he misreported her testimony and that of the witness Gannon.

4. That the Referee drew no distinction between the case of a husband receiving the incomes from the trustee, with knowledge and implied assent by the wife, and his receiving the incomes directly from the property, insisting that in the latter case he was the agent of the wife and that there was no presumption of gift.

5. There was no presumption in favor of plaintiffs, who had notice of the alleged trust.

6. That the land was the wife's, and it was error to recommend a foreclosure of the mortgage.

The plaintiffs also filed exceptions:

1. Because it was error to admit the declarations of Flinn to Mrs. A. D. Flinn as to payment of the lands with incomes of the slave property.

2. It was error in fact to find that the lands were so paid for.

3. The notice of Mrs. Flinn's *claim* insufficient to bar the plaintiffs' claim as purchasers or creditors without notice.

4. It was error to hold that the Edwards mortgage was a prior existing lien to the plaintiffs', inasmuch as it appeared that Mrs. Flinn purchased said mortgage with trust funds applicable to the debts of H. K. W. Flinn. Her purchase was payment. At all events this debt draws seven per cent. only after maturity.

On hearing the report and exceptions, it was ordered, 10th October, 1874, that the report be recommitted to the Referee to ascertain whether, through mistake or inadvertence, Mrs. Flinn's testimony had been misreported. On the 12th of October the Referee reported that his notes of testimony were full; that he was unable from memory to make corrections, but his recollection of the testimony confirmed his notes as to the language of Mrs. Flinn.

TOWNSEND, J. This action was originally instituted by the plaintiffs against the defendant, H. K. W. Flinn, for the foreclosure of a mortgage. In the answer of the defendant, certain supposed equitable claims to the mortgaged premises by Ann D. Flinn are set up against the plaintiffs' right to the judgment of foreclosure and

sale.   By order of the Court, Mrs. Ann D. Flinn was made a party, as well as A. F. Edwards, who, it was alleged, held a senior mortgage upon the lands described in the complaint.

The issues of law and of fact raised by the pleadings were submitted to a Special Referee, who has made his report to the Court. Exceptions are taken thereto by the plaintiffs and defendants, and these suggest the questions for the decision of the Court.

The exceptions of the plaintiffs will first receive consideration. The first exception is that the Referee erred in admitting as testimony the statement of H. K. W. Flinn in reference to the payment of the purchase money of the land in question with the incomes or proceeds of the labor of the slaves conveyed by the post nuptial deed.

In *Snelgrove* vs. *Martin*, 2 McC., 241, the Court says: "The declarations, acts, &c., relating to the matter in dispute, made by a person while he was interested, is good evidence against a party claiming subsequently under such person."

In *Land* vs. *Lee*, 2 Rich., 168, it was held that the declarations of the vendor of personal property, made before the sale, are competent evidence against his vendee.

In *Floyd* vs. *Minstey*, 5 Rich., 374, Frost, J., says: "The plaintiff claims under the heirs of Isabella Floyd, and her declarations against her interest, respecting her title, or the character of her possession, or of the defendant's possession, as adverse to her right to the land, were competent for the defendant."

The same rule has been laid down in other cases.—*Simmons* vs. *Parsons*, 1 Bail., 63; 1 Greenleaf's Ev., § 97, 190; *McCord* vs. *McCord*, 3 S. C., 579.

The plaintiffs claim under H. K. W. Flinn, and his declarations made while he was interested in regard to the land in question are clearly competent evidence against the plaintiffs.

The first exception of the plaintiffs is overruled.   The second exception alleges error in the finding of the Referee that the lands in question were paid for with the incomes or proceeds of the labor of the slaves.   I cannot discern any error in the finding of the Referee on this point.   A careful review of all the testimony conducts my mind to the same conclusion.   The second exception is overruled.   The third exception complains that there is error in the finding of the Referee that the plaintiffs had sufficient notice of

the equitable claim of Ann D. Flinn to defeat their claim as purchasers or creditors without notice.

The plaintiffs had actual notice of the existence of the equitable claim. In consequence of it, inquiry was instituted and information obtained. Notwithstanding this, the plaintiffs accepted the mortgage deed. The notice, in my opinion, was such as to defeat the claim of the plaintiffs, and there is no error in the finding of the Referee. The third exception is overruled.

The fourth exception alleges error because the Referee decided that the mortgage of A. F. Edwards was a prior existing lien to the mortgage of the plaintiffs. I can perceive no fault in the finding of the Referee on this point. This exception suggests another question which does not seem to have been presented in the argument before the Referee. It relates to interest. The debt due to A. F. Edwards, according to the terms of the contract, will bear interest at the rate of fifteen per cent. per annum up to the time of its maturity, and after that date interest should be made up at the rate of seven per cent.

The fifth exception is overruled, with the exception of the part relating to interest.

The exceptions of the defendant will next be considered.

The first exception complains because the Referee has totally misconceived the testimony of the defendant in reference to her acquiescence in the appropriation by her husband of the proceeds of the plantation to his own use. Is the conclusion of the Referee that the use and appropriation by H. K. W. Flinn of the incomes of the labor of the slaves of his wife, with her knowledge and consent, unsupported by the evidence? The impression made upon my mind in reviewing the evidence is, that Mrs. Flinn was willing and fully acquiesced in the appropriation by her husband of the income derived from the labor of her slaves to the payment of plantation and family expenses. I am not, however, impressed, as the Referee has been, that she expressly or impliedly consented that the incomes should be appropriated in the way of making purchases of land or for the payment of lands already conveyed to her husband. There does not appear to have been a silent acquiescence on her part in the action of her husband and in paying the purchase money of the "Home tract" out of her incomes.

Mrs. Ann D. Flinn testifies that she was not distinctly informed of her rights until some time in 1857 or early in 1858. At that

time she appears to have had a consultation with her brother, Erasmus P. Ervin, who was a lawyer, in relation to her rights under the post nuptial settlement. This act on her part indicates a disposition to become conversant with her rights and to assert them in every possible way. At some time, either prior or subsequent to this conversation, she made efforts to see the post nuptial deed, but failed to procure an inspection of it until after the death of the trustee, when it was exhibited to her by his widow. After the conversation with E. T. Ervin, Mrs. Ann D. Flinn stated to William Zimmermann and Dr. Zimmermann that the land was hers. To her husband, H. K. W. Flinn, and in his presence, she asserted her right to the land, and declared that she did so in consequence of the information received from her brother. To Zimmermann Davis, one of the plaintiffs, she likewise asserted her claim to the land, which had been paid for with the incomes of her separate estate. All this was before the execution of the mortgage deed to the plaintiffs by her husband and the institution of this suit. In 1870 she consulted attorneys as to her rights, and received a written opinion from them. In consequence of the advice therein contained, a declaration of trust was made, the subject matter of which was the land now in question, by her husband, and immediately thereafter placed on record. Objection was made to the execution of the mortgage to Edwards, but the husband's importunities caused her to waive it afterwards. Mrs. Ann D. Flinn says she took no steps to legally assert her rights until advice was sought from attorneys in 1870, because there was no necessity for doing so. She did advertise the plaintiffs of her rights after her husband commenced his dealings with them, and this evinced a disposition to prevent her husband from asserting a claim to the land in opposition to hers.

H. K. W. Flinn did take the titles to the land, and Mrs. Ann D. Flinn testifies that she did not object, for the reason that she was ignorant of title deeds and the legal effect of placing title to the lands in her husband. This was very natural for a female, inexperienced in business transactions, and particularly for a confiding wife. Under the circumstances, most wives would have acted as Mrs. Ann D. Flinn, and no objection would have been urged to any arrangement suggested by the husband relating to a business transaction professedly for the benefit of the family. Notwithstanding this, we find Ann D. Flinn afterwards asserting her rights, and claiming the land as her own, not only to her husband, but to other

parties.  H. K. W. Flinn, by his acts and declarations, evidenced that he recognized the rights of his wife.  When the title deeds to the various tracts of land are executed to him, they are quietly laid away and never spread upon the records in a public office.  Such publicity of the character of the deeds may have invoked an interference on the part of some of Mrs. Ann D. Flinn's relatives, and, in apprehension of something of this kind, may have prompted him not to record them; or he may have felt that the rights of his wife could be asserted, even though the legal title to the land was in him, and it was unnecessary to put them on record.  A disposition not to mislead creditors may have actuated him in what he did.  The fact is significant, and the inference fair from it that H. K. W. Flinn himself recognized the claim and rights of his wife to the land when it had been paid for by her annual incomes.

In 1870, H. K. W. Flinn executed a declaration of trust, in which he acknowledged the rights of his wife and recognized her claim to the land now in question, which was duly recorded.  This act of his shows that, in 1870, he thought the land was his wife's, and the fair inference from the act and his former conduct is that he had never doubted the fact before, although he may have made declarations to the contrary.  If such was not the case, why did he make the declaration of trust?

I am of the opinion that there was error in the finding of the Referee that Mrs. Ann D. Flinn consented to the appropriation by her husband of the incomes from the labor of her slaves to the purchase of the land or payment of the purchase money of the same.

The second exception of the defendant has been anticipated in the consideration of the first.

The third exception was heard and disposed of at the hearing.

The fourth exception alleges error on the part of the Referee in the application of the law.  It insists that a distinction has not been drawn between the cases of a husband receiving the annual incomes from the trustee of the wife and the receipt of them by himself while engaged in the management and control of the separate estate. The Referee has construed the post nuptial deed, and no objection is urged against his construction.  He says Mrs. Ann D. Flinn was clearly given the right by the deed, the trustee consenting, to possess and use the slaves during her life, or to hire them out and receive the hire; and she unquestionably had the right, at her discretion, to dispose of the proceeds of the labor of the negro slaves,

Columbia, April, 1875.

or of their hire, when turned over to her by the trustee, as she saw fit. Mrs. Ann D. Flinn, then, had free control over the income and usufruct of said slaves. She was authorized to make her husband the beneficiary of them. The question then arises, did she do so? It has already been announced, as a conclusion of fact, that Ann D. Flinn did not object, but acquiesced, rather, in the appropriation by her husband H. K. W. Flinn of the annual incomes to the support of the family and the preservation of the trust estate, but did not assent to or acquiesce in the appropriation of them by him to the purposes of purchasing land for which he had taken titles in his own name.

Is the distinction contended for in the exception drawn by the authorities? The doctrine is well established "that when the husband has been permitted to receive the incomes of the separate estate of his wife during his life, without objection or interference, the accumulations from that source will belong to him absolutely, and at his death will go to his personal representatives. This arises from the presumption that the fund was placed by her at his absolute disposal. The right of the husband to receive the wife's separate estate rests solely on her assent, expressed or implied, and when such assent does not expressly exist, or cannot be properly implied, the trustee would not be justified in making payments to him."—Hill on Trustees. "It is well settled that when a wife, living with her husband, permits him to receive the rents and profits of her separate estate, the presumption is that it is with her assent and by way of gift."—Hill on Trustees, 421. In *Methodist Church* vs. *Jacques*, it is held "that, as between strangers, a more strict and severe proof would be required; but the books teach us that the greatest liberality is shown, and the most favorable presumptions indulged, when the husband is permitted by the wife to be concerned in the management of her separate estate as it occasionally accrues."

These doctrines seem to apply to the case of a wife having a trustee appointed under the deed who has the management and control of the separate estate and pays over the annual income or profits. When the husband receives them without objection or interference on the part of the wife, the presumption is it is with her assent and by way of gift. The accumulations in such a case, whether appropriated by the husband to the payment of family expenses or otherwise, would be considered the absolute property of the husband, for which neither the trustee or the husband would

be accountable. They do not apply to the case of a husband who is in the possession of the separate estate, managing it and controlling it and appropriating the accumulations to whatever purposes he sees fit. He is then the agent of the wife, and is subject to the same rules and remedies which obtained as to other constructive trustees. "The husband who has charge of his wife's separate estate comes within the ordinary rule which prevents the trustee from taking advantage from the management of trust property, and he cannot, therefore, traffic therewith by encumbrances or the like, except for her benefit."—Tiffany and Bullard on Trustees, 671. "The accumulations or savings of the wife's separate estate, or purchases with them, belong to the wife, and are subject to the same rule as the principal."—Hill on Trustees, 425. If the husband deals with the separate estate as his own, he will be treated in equity as a trustee for the benefit of his wife.—Hill on Trustees.

In the case of *Methodist Church* vs. *Jacques*, it is held that if the husband assumed and executed a considerable agency in the management of the separate property of his wife and her money transactions, then such trafficking for his own benefit under the mask and the performance of his trust as agent was altogether unwarrantable.

It will be observed, then, that there is a distinction to be drawn between the case of a trustee managing and controlling the separate estate and the husband doing so, as to the effect of the appropriations by the husband of the annual incomes.

When the annual incomes are paid to the husband by the trustee, with the consent of the wife, either express or implied, the trustee is not held accountable for the accumulations. As between the husband and wife, the accumulations become the absolute property of the husband when there is a gift either actual or constructive. In such cases the favorable presumptions spoken of in the case above cited can be legitimately indulged. But when the husband controls the separate estate, and appropriates the annual incomes, with the assent of his wife, express or implied, he will not be accountable for the amount appropriated for family supplies and for the protection of the trust estate, but for the excess above this applied to his own purposes, or in the purchase of property, he will be accountable; and the property thus purchased will be stamped with the character of the trust, unless there has been a direct gift of the excess to the husband by the wife.

The trustee, when he manages the estate, is held accountable for all incomes above that necessary for family support and the preservation of the trust estate; and when he invests or appropriates this, the property so purchased belongs to the separate estate. So with the husband when he controls the estate, except that the wife can make a direct gift of the incomes to her husband if she desires so to do.

The case of *Charles* vs. *Coker*, 2 S. C., 122, establishes the doctrine that when the husband is in possession of the separate estate, and receives the annual incomes, and devotes it to the purpose of obtaining family supplies and the preservation of the trust estate, without complaint or objection on the part of the wife, he is not accountable to the wife for the proceeds so received by him.

This case further establishes a distinction between the appropriation of the incomes by the husband for family supplies and the preservation of the trust estate and the use of it in purchasing property. The same distinction is drawn in the case of the *Methodist Church* vs. *Jacques*, and some of the other cases cited by the Referee.

In the one case, when the incomes are used for family purposes and for the benefit of the trust estate, the wife consenting, on the presumption of consent arising, the husband is not accountable for the incomes received. But when they are employed in purchasing property by the husband, while he is controlling and managing the separate estate, without the express consent of his wife or a direct gift, the property so purchased belongs to the trust estate. In such a case there can be no presumption of assent by way of gift.

When the husband claims the incomes appropriated by him in purchasing property by way of gift, the fact of the gift must be established.

"A direct gift from the wife to the husband will be supported, although the Court looks with jealousy on such transactions; and if there be any improper influence exercised by the husband, they will refuse to give effect to it."—Hill on Trustees, 424.

In *Methodist Church* vs. *Jacques*, it is said: "Though Courts of equity look with jealousy and suspicion at gifts from a wife to her husband, yet they will be supported if done freely and voluntarily."

In Leading Cases in Equity, in note, it is held: "But the concurrence of the wife in her husband's receipt of a legacy is not a gift."

In this case, if the husband claims by way of gift, it was incumbent on him to establish the gift. There is no proof that there was a direct gift of the incomes employed by H. K. W. Flinn in purchasing the land by his wife. In the absence of proof, it cannot be held that there was such a gift. Suppose a constructive gift is sufficient in such a case as that now under consideration, the evidence does not sanction the conclusion that there was ever such a gift.

There is another view of this case which leads me to the same conclusion—that the land purchased belongs to the separate estate of Ann D. Flinn. What relation did H. K. W. Flinn sustain towards Ann D. Flinn? The trustee under the post nuptial deed turned over the negro slaves to the *cestui que trust.* According to the decision of *Youmans* vs. *Buckner,* 3 Hill Ch., 221, when the trustee under the deed allows the property to go into the possession of the *cestui que trust* who is a *femme covert* she is regarded as holding under him; she becomes the agent of the trustee. When Ann D. Flinn permitted her husband to assume the control and management of the trust estate, he became her agent. He sustained then towards his wife the relation of husband and constructive trustee.

"A purchase by a man in his own name, with funds in his hands in a fiduciary capacity, creates a resulting trust in favor of those whose money is thus employed."—Adams' Equity, 166, note.

So if a husband purchases property with his wife's separate estate, there is a resulting trust in favor of the wife. Ann D. Flinn did not assent to the use of her incomes by her husband in the purchase of property for his benefit, and, occupying the relation he did, the property so purchased belongs to the separate estate of his wife.

Suppose H. K. W. Flinn is to be considered as a trustee *de son tort,* by having, of his own will, intermeddled with the trust estate, he would be subject to the same rules and remedies which obtain as to constructive trustees.—Hill on Trustees, 173.

Suppose the relation of only husband and wife may be considered as subsisting between H. K. W. and Ann D. Flinn. If the husband applied the incomes in part to the purchase of property for his own benefit, and the presumption that it was a gift on the part of the wife may arise, yet the proof shows that the presumption in this particular case has been rebutted, for the wife constantly

asserted her claim to the land so purchased and never quietly acquiesced in such an appropriation of her incomes. Looking at the case in any aspect, I am of the opinion that the land described in the complaint is the separate property of Ann D. Flinn and was at the time of the execution of the mortgage deed to the plaintiffs.

In so far as the incomes were appropriated by H. K. W. Flinn to the payment of family expenses and the preservation of the trust estate, this was sanctioned by Ann D. Flinn, and H. K. W. Flinn would not be accountable for them. But the portion of the incomes invested by him in the land was without the consent of the wife, and the property so purchased is the separate property of Ann D. Flinn.

If the land is the separate property of Ann D. Flinn, did the plaintiffs have sufficient notice of her equitable claim at the time of the execution of the mortgage deed by H. K. W. Flinn? It appears that the plaintiffs had actual notice. This is the conclusion of the Referee. If so, they cannot occupy the position of a purchaser for valuable consideration without notice. The equitable claim of Ann D. Flinn is superior to theirs, and must prevail, unless they have some higher equity. Lands purchased by the husband with the separate moneys of his wife in his own name enures to her benefit as a resulting trust. And a purchaser from the husband in such case, with notice of the trust, takes the land subject to the trust.—*Methodist Church* vs. *Jacques*, 1 John. Ch., 450.

The debt of the plaintiffs was that of H. K. W. Flinn. He contracted it and executed the mortgage to secure it. The wife's separate property should not be subjected to sale for the payment of it. The very object of the post nuptial deed was to protect the separate property from sale for the husband's liabilities. To subject this land to the payment of the plaintiffs' claim would defeat the very object of the trust.

But the Referee finds that the debt of the plaintiffs was principally for plantation and family supplies. At the time it was contracted, the negro slaves, constituting the original separate estate, had been emancipated. The debt was not, therefore, contracted for the benefit of the original separate estate. It was the duty of the husband to support the family. The only separate estate at the time was the land which is now the subject of controversy. It was not necessary to contract the debt for the benefit of the trust

estate. The plaintiffs are not entitled to subject the land to sale for the payment of their debt.

It is the judgment of the Court that the lands described in the complaint, and purchased by H. K. W. Flinn with the incomes arising from the separate property of his wife, are the separate estate of Ann D. Flinn, and the plaintiffs are not entitled to a judgment of foreclosure and sale.

It is adjudged and ordered that the complaint be dismissed.

The plaintiffs appealed.

*Edwards & Dargan,* for appellants:

1. Appellants submit that there is no proof that the land in question was paid for by the incomes of the trust property. The proof relied on by the defense was the declarations of H. K. W. Flinn, given in testimony by Mrs. Ann D. Flinn, who, it is submitted, was an incompetent witness to make the proof.—Rev. Stat., 672, Chap. VIII, § 415; *Guery* vs. *Kinsler,* 3 S. C., 423.

2. But, whatever may have been the declarations of H. K. W. Flinn, it is absolutely certain that the lands were not paid for with the incomes of the trust property. According to Mrs. Flinn's own testimony, her husband borrowed money on his personal credit to pay for portions of it. It also appears that by the resale of the Hill land he realized a profit of about $2,000, and about the same time paid a considerable amount of cash on the purchase of a part of the land now in question. The presumption is that he paid it from the profit so realized. Then we hear of his receiving money from Mrs. Flinn's guardian, (not trust funds,) and that he bought stock and implements and some slaves of his own, which he employed on the place. It is impossible, therefore, to say that the lands were wholly paid for with incomes from the trust property, and the Referee cannot be understood as finding that as a fact. An accounting would be necessary to say what of the incomes were so employed, and the Court would require strictness in the proof that trust funds were invested in the lands.— *Gordon* vs. *Goodwin et al.,* 2 N. & McC., 70.

3. The doctrine that when a trustee mixes trust funds with his own the whole enures to the benefit of the *cestui que trust* does not apply here, because a husband is entitled to the receipt of the incomes of his wife's property as a compensation for his liability to

maintain her, and is not accountable for their application, together with his own funds, in the purchase of property. He is not a trustee, and the incomes are not trust funds.—Hill on Trustees, 410; *Carter* vs. *Anderson*, 3 Sim., 370; 1 Rep. Hus. and Wife, 273; Perry on Trusts, 101, § 128.

4. The Referee finds that H. K. W. Flinn did support his family handsomely; made all contracts with factors for plantation and family supplies in his own name, and credit was extended to him; that the claim of plaintiffs was on a bond given for an account contracted mainly for plantation and family supplies; and that his management of the negroes and plantation, and his receipt, use and appropriation of their incomes and labor, was with the knowledge and consent of his wife resident with him; and his findings of fact ought rather to stand than the findings of the Circuit Judge reversing them.—*Butler* vs. *Ardis*, 2 McC., Ch. 71, 72; *Lord* vs. *Lowry and Fogartie*, Bail. Eq., 510, 514; *Gee* vs. *Hicks*, Rich. Eq. Cases, 5, 19, 20; *Alexander* vs. *Maxwell, idem*, 302, 314; *Sullivan* vs. *Thomas*, 3 S. C., 531, 549, 550.

5. Whatever of incomes from the trust property may have been used by H. K. W. Flinn in paying for lands, it was done with the knowledge and consent of Mrs. A. D. Flinn, and she cannot now, even as between him and herself, claim the property purchased or an account of the incomes. Her assent amounted to a gift of the income to her husband.—Hill on Trustees, 425, and note; *Methodist Episcopal Church* vs. *Jacques*, 3 John. Ch., 77; *Charles* vs. *Coker*, 2 S. C., 123.

In this case, Mrs. Flinn's assent is properly inferred from her long acquiescence in the course of dealing by her husband, and she is estopped as to third persons from making the claim she now sets up.—Story Eq. Jurisp., § 1284, a.; Perry on Trusts, 608, 609, §§ 665, 666; *Thrump* vs. *Harman*, 3 M. & R., 5, 2; *Cosbally* vs. *Granger*, 4 Jr. Eq., 173; *Gardner* vs. *Gardner*, 1 Gif., 126; McGlinsey's App., 14 S. & R., 64; *Shirley* vs. *Shirley*, 9 Paige, 363.

6. In this case there was no constructive trust cast upon the husband, and, therefore, the distinction made by the Judge, and insisted on by counsel, between the case of a husband receiving the incomes of a wife's separate estate from the trustee and a husband in possession using and appropriating the incomes with her consent is unreal.—Same authorities as last above.

7. The post nuptial settlement, by its terms, contemplated no accumulations or accessory estate, and created no trust whatever as to the incomes. Hence the marital rights of the husband attached upon the incomes as they arose, and his application of them to his own use, or in the purchase of property for himself, carried no trust with them.—Hill on Trustees, 424; Perry on Trusts, 610, § 667; *McKnight* vs. *McKnight*, 10 Rich. Eq., 157, 161; *Staggers* vs. *Matthewes*, 13 Rich. Eq , 142.

8. Full notice to Reeder & Davis of Mrs. Flinn's claim could not affect their mortgage, as the land was paid for by H. K. W. Flinn, and the titles perfected in him, and a considerable portion of his debt incurred long before the alleged notice, and their mortgage taken before any steps by Mrs. A. D. Flinn to assert her claim. And, though notice of Mrs. Flinn's vague claim to all the property was brought home to one of the plaintiffs, it was not such notice as to defeat their mortgage even if she were entitled to an account from her husband.—Perry on Trusts, 608, 609, §§ 665, 666.

9. Mrs. Flinn's purchase of the Edward's mortgage (assigned to E. R. McIver) was made with funds belonging to the estate of H. K. W. Flinn. They were trust funds in her hands for the payment of debts, and using them for the purchase of said mortgage was payment of the debt; and thereby she also became executrix *de son tort*, and is liable to account for the amount used in the purchase.—Angel on Fire and Life Insurance, 456, § 396; *Chapin* vs. *Fellows*, 4 Am. Rep., 49; *Charter Oak Life Insurance Company* vs. *Brent, idem*, 328.

10. If the plaintiffs' mortgage is supported, we claim that they are entitled to an account for rents and profits from the defendant, Ann D. Flinn, and ask that that question be remitted to the Circuit Court.

*McIver*, contra:

As to the admissibility of the declarations of H. K. W. Flinn, we contend that the rule is that the acts and declarations of a person, against his interest, done and made while in possession of the property which is the subject matter of the action are always admissible in a controversy between a third person and a party claiming under such person. The plaintiffs here claiming under H. K. W. Flinn, his declarations are admissible.—*Simmons* vs. *Por-*

*teous*, 1 Bail., 63; *Floyd* vs. *Minstey*, 5 Rich., 374; *McCord* vs. *McCord*, 3 S. C., 579; Adams' Eq., 168, note.

The question of fact raised by appellants as to whether the lands in question were paid for with the proceeds of the wife's separate property has been determined adversely to the appellants, both by the Referee and by the Circuit Judge, and will not be disturbed by this Court "unless clearly erroneous."—*Sullivan* vs. *Thomas*, 3 Rich., N. S., 545.

The same remarks will apply to the question of notice raised by the appellants.

The Referee failed to observe the distinction between the acquiescence of the wife in the use by her husband of the incomes for the support of the family and her acquiescence in his applying such incomes to the purchase of property in his own name. In the former it is admitted she did acquiesce, but in the latter she did not; and, on the contrary, from the time she was informed of her rights, always set up a claim to the land.

Again, the Referee loses sight of the distinction between the case of a husband receiving the incomes of his wife's separate estate *from her trustee*, with her knowledge and implied assent, and the case of a husband appropriating to his own use the incomes of the separate property of which he is in possession, either as the agent of the wife or as the trustee *de son tort*, and, therefore, his conclusions of law are not sustained by the cases cited by him. *Powell* vs. *Hanky*, (2 P. Wms., 82,) was a case in which the wife had constantly permitted the husband to receive the incomes of her separate estate, consisting of bonds and mortgages, without making any complaint, either to the debtors who paid the money or to her trustees, and this was a bill by the wife to require the representatives of the deceased husband to account for incomes received by him during his life.

*Milnes* vs. *Busk*, 2 Ves., 488, was a case in which the wife, under a power of appointment, expressly directed her trustees by deed to pay over the rents and profits, during her life, to her husband "for his own proper use and benefit."

*Smith* vs. *Camelford*, 2 Ves., 698, was a case in which the questions under consideration were only incidentally alluded to, but it is plain from what is said at page 715 that the husband had received the incomes from the wife's trustee with her assent, and the Lord Chancellor says: "If she permitted him to spend the income, he is not accountable."

*Squire* vs. *Dean*, (2 Bro. C. C., 326,) simply decides that where a husband is permitted by the wife to receive the incomes of her separate estate, and such incomes are expended for the general purposes of the family, she will not be allowed to require the representatives of the husband to account for the same out of his estate.

The only ground upon which the husband could claim would be by virtue of a gift from the wife, either express or implied. There is no pretense of an express gift, and none can be implied from the testimony.

The Court of Equity looks with jealousy and suspicion at gifts from a wife to her husband.—Hill on Trustees, 639, *425, note 1.

Even in England, where the wife is regarded as a *femme sole* with respect to her separate property, and has power to charge or dispose of it as she pleases, except in so far as she is expressly restricted by the terms of the instrument creating the separate estate, it has been held that this doctrine ought not to be applied to transactions between husband and wife; and in *Milnes* vs. *Busk*, 2 Ves., Jr., 488, Lord Rosslyn said that *Pawlet* vs. *Delaval*, 2 Ves., 663, was the only case arising directly upon a gift from the wife to the husband, and there Lord Hardwicke placed the validity of the gift essentially upon the confirmation by the wife after her husband's death.

Here, where the reverse of the English rule has been established, (*Ewing* vs. *Smith*, 3 DeS., 417; *Reid* vs. *Lamar*, 1 Strob. Eq., 27; *Nix* vs. *Bradley*, 6 Rich. Eq., 43; *Dunn* vs. *Dunn*, 1 S. C., 354,) the remark of the Lord Chancellor should apply with increased force.

The husband was in possession of the wife's separate estate either as her agent or as trustee *de son tort*. In neither case could he make profit from his dealings with the trust estate.—Hill on Trustees, *406, note 1, *540, note 1, *159–60, *173.

The savings or accumulations from the wife's separate estate or purchases with them belong to the wife, and are subject to the same rules as the principal.—Hill on Trustees, *425, 641, note; Clancy on Women, 271; *Methodist Church* vs. *Jacques*, 1 John. Ch., 450; *Parker* vs. *Brooke*, 9 Ves., 583.

The plaintiffs can occupy no better position than the husband, through whom they claim, as they cannot occupy the position of purchasers for valuable consideration without notice.—Hill on Trustees, *509, 761.

Without conceding the proposition that a mortgagee can ever occupy the position of a purchaser, we contend that the plaintiffs cannot, because they paid no money—their mortgage was for an antecedent debt.— *Williams* vs. *Hollingsworth*, 1 Strob. Eq., 113; *Dillard & Kirby* vs. *Crocker*, Speers' Eq., 27; *Shultz* vs. *Carter*, Speers' Eq., 542.

Again, as we have seen, *supra*, the plaintiffs had notice.

As to the claim of appellants that the debt secured by the mortgage in question was in fact the debt of the trust estate, being contracted for plantation and family supplies, we say: The pleadings make no such claim in any proper form ; the paper styled a reply was not proper, as there was no counter-claim set up in the answer, and a reply was not required by any order of the Court.—1 Tiff. & Smith, N. Y. Prac., 388; *Garner* vs. *Manhattan Build. Asso.*, 6 Duer, 539; *Devlin* vs. *Bevins*, 22 How., 290.

If, however, the paper called a reply can be regarded as a part of the pleadings, then it does not state such a case as would entitle a creditor to subject trust property to a payment of his debt. It only states that the debt was for supplies used by the family and for carrying on the planting interests. It does not state that the money was advanced or the debt created in the advancement of the objects of the trust, or for the preservation of the trust estate.— *Magwood* vs. *Johnston*, 1 Hill Ch., 232; *Tupper* vs. *Fuller*, 7 Rich. Eq., 170.

July 13, 1875.   The opinion of the Court was delivered by

MOSES, C. J.   The issues of law involved in this case are to be determined without regard to the change made by the Constitution of 1868 in relation to the powers of married women over property which they held at the time of marriage or afterwards acquired. Neither, in the view which we take of the principal point presented by the appeal, is it necessary to consider whether the appellants had notice of the fact that the lands included in their mortgage were purchased by the husband with the proceeds of the labor of the slaves, conveyed by the deed of settlement to the separate use of the wife. It was of personal property only, and by its terms reserved " to the parties interested in the same, for the period during which they may be entitled to receive the income," the right, " at their discretion, either to possess and use the said slaves or hire out

the same." Under this power they continued in the charge of the husband and wife, probably never having been in the actual possession of the trustee. They were used and employed by the husband from the date of the deed in 1851 to their emancipation as they had been when their absolute title vested in him, and no difference followed in his unrestricted disposition of the proceeds of their labor.

With full knowledge by the wife of his application of the income from the trust property to the purchase of the lands, taking the title in his name, and treating them as his own independent property, she never demanded any account, though she resided on the very land for near twenty years, and during all that period forebore from any interposition through which she could have secured the enjoyment of any separate right to which she might have been entitled under the settlement. If she ever considered that she had an interest in the lands by reason of their purchase with the income derived from the labor of the slaves settled to her sole use, she abstained from following or charging them under the claim which she now asserts. It was on motion of the counsel of her husband that she even became a defendant to this cause. Is she debarred by her course in regard to the income from her separate estate from now asserting an equity which can override the title of the husband to the land covered by the mortgage?

The decree of the Circuit Judge admits that if the husband, with the knowledge of the wife, receives from her trustee the income of property conveyed to her sole use, the accumulations from that source belong to him absolutely. It contends, however, that a different rule prevails, where, with the consent of the wife, the property is in the immediate management and control of the husband.

We can perceive no principle to sustain such a construction, and a close examination of the cases fails to disclose a single authority in its support. The rule rests on the assumption of either an express gift of the income to the husband or one implied from her acquiescence.—Hill on Trustees, 425; *Powell* vs. *Hankey & Cox*, 2 P. W., 82; *Beresford* vs. *Archbishop of Armagh*, 13 Sim., 643; *Thromp* vs. *Harman*, 3 M. and K., 513. In *Charles* vs. *Coker*, (2 S. C., 136,) this Court said: "Even where the married woman is considered in regard to her separate estate as a *femme sole* only to the extent of the power conferred by the instrument, if this does not restrict her disposition and alienation, if she permits the husband to

receive the rents and profits of the estate, the presumption is that it is with her assent and by way of gift."

If neither the trustee nor the husband is liable to the wife, where, with her assent, the income of her settled property is paid by the trustee to the husband, the mind seeks in vain for a reason why a dif-erent rule should be enforced where the usufruct and income to which the wife is entitled are not only transferred to the husband, but permitted for a long series of years to be subjected to his sole control. In the latter instance her purpose is more distinctly disclosed and manifested. But the intention to confer a gift is still more apparent when regard is had to the terms of the settlement in question and the course of the wife in regard to the powers which she was at liberty to exercise under it. While it transfers the slaves to a trustee for the sole and separate use of the wife, during the joint lives of herself and husband, it expressly reserves to her, while she continues entitled to the income, the right to possess and use or hire them out. Under this reservation she retained the possession. The trustee was thenceforth discharged from all responsibility for the possession, and the use was subject to her control, with the full right to all the profits to be derived from it. The entire and uncontrolled use she committed to her husband, allowing him for a succession of years not only to receive the income but to appropriate it according to his own will and pleasure, with full knowledge of the fact that he had applied a portion of it to the purchase of the "Home place," on which they lived, taking a title to the several tracts which composed it in his own name. Effect must be given to her acts according to their manifest intent. On what principle can the claim she now makes be reconciled with her course in regard to the income of the property for so extended a period? If she was dissatisfied with the course of her husband in respect to the disposition of it, ready means were at her disposal to secure it for her own separate use. A transfer of the property to the trustee, with directions to pay the proceeds alone to her, would at once have accomplished the purpose and left the husband powerless as to any appropriation of it to his own purposes.

"The most favorable presumptions," says Chancellor Kent, in *Methodist E. Church* vs. *Jacques*, (3 John. Ch., 79,) "are indulged when the husband is permitted by the wife to be concerned in the management of the income of her separate estate as it occasionally

accrues. Between strangers a more strict and severe rule would be required."

There is another principle which materially affects the claim of the wife now interposed. It is her want of diligence in not resorting to the means of securing the income of the property to her sole use. "Courts of equity administer their aid only in favor of those who are guilty of no improper acquiescence or delay. Hence, if there be a clear breach of trust by a trustee, yet if the *cestui que trust* or beneficiary has for a long time acquiesced in the misconduct of the trustee, with full knowledge of it, a Court of equity will not relieve him, but leave him to bear the fruits of his own negligence or infirmity of purpose."—2 Story's Eq., § 1284.

The same reason exists for applying the principle to a husband permitted by the wife to use and control property secured to her separate use. If there has been a breach of duty on his part, her delay in freeing herself from the consequences and seeking reparation is another evidence of her assent and acquiescence.

A question has been made as to the mortgage of H. K. W. Flinn to Edwards, and by him assigned to McIver for the benefit of Mrs. Flinn. It appears by the report of the Referee that such a mortgage exists and is a prior valid claim upon the land included in the mortgage of the plaintiffs. Exception was taken to this conclusion by the appellants, because "it appeared that Mrs. Flinn purchased said mortgage with trust funds applicable to the debts of Flinn, the husband, and amounted to payment." The report of the testimony discloses not a single fact in regard to the means through which the assignment was procured.

The Judge overruled the exception, save as to the rate of interest the mortgage debt is to bear after maturity. As we have been left without any evidence of the fact on which the exception is rested, we must sustain the conclusion of the Court in regard to it.

It is ordered that so much of the decree of the Circuit Court as dismisses the complaint, thereby holding that the plaintiffs are not entitled to a judgment of foreclosure of their mortgage, be reversed; that the case be remanded for such orders as may be necessary to give effect to the judgment of this Court as herein declared.

The point made by the plaintiffs as to their right to an account of rents and profits from the defendant, Ann D. Flinn, has not been passed upon by the Circuit Court. Its consideration was necessarily excluded by the effect of the decree on the mortgage.

It is remitted to the Circuit Court, with leave to the plaintiffs there to submit it, if they so desire.

*Wright*, A. J., and *Willard*, A. J., concurred.